UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                      CASE NO. 10-13924

CHRIS WAYNE ANDERSON AND                                    SECTION "B"
KELLY MELECH ANDERSON

    DEBTORS                                             CHAPTER 7

## MEMORANDUM OPINION

This matter came before the court on May 22, 2013 on the debtors' motion to reopen their case and to avoid a lien pursuant to 11 U.S.C. § 522(f)(1)(A) **(P-67)**, and the objection thereto filed by creditor First National Bank USA (the "Bank") **(P-79)**. After reviewing the parties' briefs, the arguments of counsel and the relevant cases, the court holds that the debtors may avoid the judgment held by the Bank that affects property purchased after the judgment was recorded in which the debtors claim a homestead exemption.

### I.    Background Facts

The pertinent facts in this dispute are not seriously contested. The Bank currently holds a judgment in its favor and against the debtors in the amount of approximately $445,000.00.[1] On June 22, 2010 the Bank properly recorded its judgment in St. Tammany Parish pursuant to Louisiana law.[2] At that time the debtors did not own the

---

[1] This amount is taken from the debtors' motion (P-67) at p. 3.

[2] Exhibit 1 to the debtors' motion (P-67).

property in question. On October 6, 2010, the debtors purchased a house in Madisonville, Louisiana; Madisonville is located in St. Tammany Parish, where the judgment was recorded. On October 21, 2010, the debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code, and in their bankruptcy schedules, claimed a homestead exemption on the property they had purchased on October 6, 2010. No objection was filed to the claimed exemption, and the case proceeded in the regular fashion. The Bank filed a proof of claim listing its debt as an unsecured nonpriority claim in the amount of $803,413.75.[3] On this basis, the Chapter 7 Trustee distributed a pro rata share of the estate's assets to the Bank - the Bank received $18,095.86.[4] The debtors received their discharge on April 13, 2011. The case was closed on December 8, 2011.

On March 14, 2013, the debtors filed the instant motion, seeking to avoid the lien on the property because they are seeking to refinance their home, and the Bank's judgment, still recorded in the St. Tammany Parish mortgage records, is proving to be an obstacle. The Bank filed an objection to the motion.

## II. Legal Analysis

As Justice Marshall wrote in *Johnson v. Home State Bank*, 111 S.Ct. 2150 (1991):

> To put this question in context, we must first say more about the nature of the mortgage interest that survives a Chapter 7 liquidation. A mortgage is an interest in real property that secures a creditor's right to repayment. But unless the debtor and creditor have provided otherwise, the creditor

---

[3] Proof of Claim Number 7.

[4] Trustee's Final Report and Account (P-55); Trustee's Final Account and Distribution (P-65).

>ordinarily is not limited to foreclosure on the mortgaged property should the debtor default on his obligation; rather, the creditor may in addition sue to establish the debtor's *in personam* liability for any deficiency on the debt and may enforce any judgment against the debtor's assets generally.  A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation.  However, such a discharge extinguishes *only* "the personal liability of the debtor."  Codifying the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy.[5]

Here, the debtors have already received their discharge as to their personal liability on the debt.  The debtors' motion seeks relief as to the *in rem* portion of the debt.

In *Owen v. Owen,* Justice Scalia further elaborated on the nature of the debtor's liability and interest in property *vis a vis* the exemptions in § 522:

>Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts. § 522(c).  No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate.  Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted.  Thus, if a debtor holds only bare legal title to his house-if, for example, the house is subject to a purchase-money mortgage for its full value-then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder, § 541(d).  And since the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property.  Legal title will pass, and can be the subject of an exemption; but the property will remain subject to the lien interest of the mortgage holder.  This was the rule of *Long v. Bullard,* codified in § 522.  Only where the Code empowers the court to avoid liens or transfers can an interest originally not within the estate be passed to the estate, and subsequently

---

[5] *Johnson v. Home State Bank*, 501 U.S. 78, 82, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (internal citations omitted).

3

(through the claim of an exemption) to the debtor.[6]

Section 522(f)(1)(A) is one example of a situation in which the Bankruptcy Code has empowered the court to avoid a lien in the above described manner. It allows a debtor to avoid a judicial lien on the debtor's property to the extent that such lien impairs an exemption that the debtor would have otherwise been able to claim. Section 522(f)(1)(A) states:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is–
>
> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5).[7]

In the case before the court, there is no question that the Bank's lien in this case is a judicial lien; that portion of the § 522(f) requirements have been met. Rather, the quarrel between the parties is whether the debtors were entitled to avoid the fixing of the lien to the extent that the lien impairs the homestead exemption to which the debtors are claiming to be entitled.

Colliers on Bankruptcy frames the quarrel between the parties in this case as an

---

[6] *Owen v. Owen,* 500 U.S. 305, 308-09, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)(internal citations omitted).

[7] 11 U.S.C. § 522(f)(1). The exception in section 523(a)(5) is for a lien for a domestic support obligation - not applicable here. The court notes that the Bankruptcy Code was amended in 1994, and again in 2005, to add this exception for debts related to domestic support obligations, and that prior to that time (and when the *Farrey* case was decided)y subsection (a)(5)(A) simply read, "a judicial lien."

4

issue "relating to the 'fixing of a lien on the interest of a debtor'."[8] Colliers begins by discussing the U.S. Supreme Court's decision in *Farrey v. Sanderfoot*, which involved a divorce settlement in which the debtor was given the family home. In exchange for this his ex-wife was given a lien on the home until he paid off the $30,000 he owed to her as her portion of the marital property.[9] The debtor filed a chapter 7 bankruptcy petition and sought to avoid the lien on the home under § 522(f). The Supreme Court held that the debtor could not avoid the lien because, "§ 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest."[10]

> The court analyzed the positions of the parties, stating that the divorce decree,
>
> transferred [the ex-wife's] previous interest to [the debtor] and, again simultaneously, granted a lien equal to that interest minus the small amount of personal property she retained. [The debtor] thus would still be unable to avoid the lien in this case since it fastened only to what had been [the ex-wife's] pre-existing interest, and this interest [the debtor] would never have possessed without the lien already having fixed.[11]

The court went on to state:

> As noted, the legislative history suggests that Congress primarily intended § 522(f)(1) as a device to thwart creditors who, sensing an impending bankruptcy, rush to court to obtain a judgment to defeat the debtor's exemptions. That is not

---

[8] 4 COLLIER ON BANKRUPTCY ¶ 522.11[4] (Alan N. Resnick & Henry J. Sommer eds.,16[th] ed.).

[9] *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

[10] *Farrey v. Sanderfoot,* 500 U.S. at 301.

[11] *Farrey v. Sanderfoot,* 500 U.S. at 300.

5

what occurred in a divorce proceeding such as this. [The ex-wife] obtained the lien not to defeat [the debtor's] pre-existing interest in the homestead but to protect her own pre-existing interest in the homestead that was fully equal to that of her spouse.[12]

On the same day that the Supreme Court decided *Farrey,* it also decided the case of *Owen v. Owen.*[13] The Bank relies on these two cases to support its argument that its judicial lien cannot be avoided. These cases both concern related issues surrounding § 522(f) of the Bankruptcy Code, and the avoidance of judicial liens. *Owen* involved another divorced couple; the wife had obtained a judgment against her former husband for approximately $160,000, and the judgment was properly recorded in Sarasota County, Florida. Although the ex-husband did not own any property in the county at the time the judgment was recorded, by Florida law, the judgment would attach to any property acquired after the judgment was recorded. In 1984, the ex-husband purchased a condominium, and the property became subject to the lien. In 1985, Florida amended its homestead law such that the condominium, which had not previously qualified for a homestead exemption, became eligible for an exemption. In 1986, the ex-husband filed a Chapter 7 petition for relief under the Bankruptcy Code and claimed a homestead exemption on the property and sought to avoid the lien pursuant to § 522(f)(1) of the Code. The central issue in *Owen* was whether state and federal exemptions should be

---

[12] *Farrey v. Sanderfoot,* 500 U.S. at 300-01.

[13] *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

treated the same, and is not pertinent here.[14]

The Supreme Court remanded *Owen* to the Eleventh Circuit Court of Appeals to determine whether the timing of the attachment of the ex-wife's lien was such that it did or did not fix "on an interest of the debtor" pursuant to § 522(f). On remand the Eleventh Circuit found that the lien affixed to the ex-husband's property prior to the property becoming homestead exempt, and that the ex-husband was therefore not entitled to claim a homestead exemption.[15] This conclusion was based on the court's reading of Florida law as allowing "attachment of a judgment lien where the lien came into existence prior to the property attaining homestead exemption status."[16]

Collier's points out that both *Farrey* and *Owen* are cases involving divorce decrees, and while courts have uniformly held that because judicial liens created in support of divorce decrees are not subject to avoidance under § 522(f), this is not the line of reasoning that many courts have followed in cases that do not involve a divorce.[17] Collier's goes on to discuss the problem that the *Farrey* analysis creates:

> Assume that the creditor has obtained a judgment against the debtor.
> Several years later, the debtor acquires property in the county in which the

---

[14] The court held that court should not treat state law exemption differently from federal law exemptions when applying § 522(f).

[15] *Owen v. Owen,* 961 F.2d 170 (11th Cir. 1992).

[16] *Id.* at 172.

[17] 4 COLLIER ON BANKRUPTCY ¶ 522.11[4] (Alan N. Resnick & Henry J. Sommer eds.,16th ed.). *In re Perez,* 391 B.R. 190 (Bankr.S.D.Fla. 2008); *In re Pacheo,* 342 B.R. 352 (Bankr.D.N.M. 2006); *In re Walker,* 345 B.R. 399 (Bankr.M.D.Fla. 2006).

judgment is docketed. In many states, the creditor's lien will attach immediately to the property. Since it would attach at the same time as the debtor's interest in the property, these cases would suggest that the lien could not be avoided. When this result is compared to the treatment that a creditor would receive of it obtained a judgment against the debtor while the debtor owned the property, the flaw in the analysis becomes more clear. A creditor who takes action against a debtor because the debtor has some property arguably is acting in a rational manner, hoping that it will obtain a judgment and have that judgment paid out of the debtor's real estate. Nevertheless, that judicial lien could be avoided under section 522(f)(1)(A). A creditor who obtains a judgment against the debtor who has no property, however, would receive more favorable treatment if the debtor later obtained real estate. Neither creditor is acting in any direct reliance on specific property of the debtor, but at least the creditor who sues a debtor who owns real estate is acting knowing that some property exists from which to obtain payment of a judgment. Nonetheless, that creditor receives less protection under the analysis of *Farrey* and the Eleventh Circuit's analysis in the remanded decision in *Owen*.[18]

The court takes note of two decisions that are directly on point with the facts of this case. *In re Scarpino*, 113 F.3d 338 (2nd Cir. 1997) by the U.S. Second Circuit Court of Appeals and *In re Pederson,* 230 B.R. 158 (9th Cir. B.A.P. 1999) by the Ninth Circuit Bankruptcy Apellate Panel. Both have held that a debtor who had a lien recorded against him while he owned no property, but then later acquired property, was not entitled to avoid the lien pursuant to §§ 522(f)(1)(A).[19] Lower courts in both the Second and Ninth Circuits have accordingly followed the precedent in those cases. This court, however, is not bound by either the *Scarpino* or *Pederson* decisions, and the Fifth Circuit has not yet

---

[18] 4 COLLIER ON BANKRUPTCY ¶ 522.11[4] (Alan N. Resnick & Henry J. Sommer eds.,16th ed.).

[19] *In re Scarpino*, 113 F.3d 338 (2nd Cir. 1997); *In re Pederson,* 230 B.R. 158 (9th Cir. B.A.P. 1999).

ruled on this specific question. As Collier's suggests, and this court agrees, these decisions, while seeming to adhere to *Farrey v. Sanderfoot* and *Owen v. Owen,* do not reach the correct result and go further than this court's reading of *Farry* and *Owen* would require.

Because the court could find no cases from the courts within the Fifth Circuit that directly addressed the question of whether the debtor may avoid a judicial lien recorded prior to the time that the debtor acquired an interest in the real property claimed as exempt, and because the court does not agree with the result reached in the *Scarpino* or *Pederson* decisions, the court researched cases from other bankruptcy courts around the country. The court particularly looked at cases from bankruptcy courts in the Eleventh Circuit, because those courts are guided by the *Owen* decision on remand. The court's research has found that several of the courts that have considered cases in which the debtor acquired property after a judgment lien had been properly recorded have granted the debtor's motion to avoid the lien.[20] The court finds the line of reasoning suggested by Collier's and followed by these courts to be more persuasive than the *Scarpino* and *Pederson* cases, and accordingly, this court will adopt their reasoning.

Finally, the court examines the practical effect of the relief requested by the Bank. The debtors are attempting to refinance their home, and they are unable to because of the

---

[20] *In re Perez,* 391 B.R. 190 (Bankr.S.D.Fla. 2008); *In re Pacheo,* 342 B.R. 352 (Bankr.D.N.M. 2006); *In re Walker,* 345 B.R. 399 (Bankr.M.D.Fla. 2006). The court also notes that the Florida bankruptcy court denied the debtor's motion to avoid the lien in *In re Whelan*, 325 B.R. 462 (Bankr.M.D.Fla. 2005), but that same judge granted the lien avoidance the next year under the same circumstances in *In re Walker, supra.*

Bank's lien. In *Matter of Henderson*, 18 F.3d 1305 (5th Cir. 1994), the Fifth Circuit overturned a decision by a bankruptcy court that denied the Chapter 7 debtors' motion to avoid a lien on their homestead because the lower court found that the lien did not impair the debtors' homestead exemption. The Fifth Circuit stated:

> We believe that [the creditor's] argument that the [debtors'] homestead property is not impaired because he can never enforce his judicial lien against the [debtors'] homestead as long as that property remains homestead property is a strong argument. It is clear to us that because the lien is unenforceable the [debtors'] homestead exemption is not "legally impaired." However, the term "impair" encompasses more than the idea of "legal" impairment. The term impair means "to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." While we recognize that the [debtors'] homestead is not "legally impaired," the *Tarrant County* case has demonstrated to us that [the creditor's] judicial lien does impair the [debtors'] homestead exemption in a very real and practical sense. We acknowledge that the determination of whether a debtor's exemption is "impaired" is a question of federal law, but we do not believe that we must make this determination without the benefit of cases such as *Tarrant County*, which demonstrate the practical real life effects of an unenforceable judicial lien on a Texas homestead. Because [the creditor's] "unenforceable" lien creates a cloud on the [debtors'] title to their homestead, making it difficult if not impossible to obtain title insurance, we believe that [the creditor's] judicial lien "impairs," i.e., weakens, makes worse, lessens in power, diminishes, and affects in an injurious manner, their homestead exemption.[21]

Thus, although *Henderson* is not on point with the facts in the case before this court, it does signal to this court that the end result of the court's ruling is correct in that it also considers the practical effect of denying the debtors' motion to avoid lien, which would be to make it impossible for them to refinance their home and to deprive them of the fresh

---

[21] *Matter of Henderson*, 18 F.3d 1305, 1310-11 (5th Cir. 1994) (internal citations omitted).

start to which they are entitled under the Bankruptcy Code.

### III.    Conclusion

For the reasons set forth in this opinion, the court holds that pursuant to § 522(f)(1) of the Bankruptcy Code, the debtors may avoid the lien held by the Bank because it impairs their homestead exemption.

New Orleans, Louisiana, July 26, 2013.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge